Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 23-1582, United States v. Seth M. Bourget. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. Good morning, Your Honor. It's Benjamin Brooks on behalf of the defendant's appellant, Seth Bourget. May it please the Court. I would like to reserve two minutes of our time. You may. And I would like to focus first on the evidentiary issue raised in the brief regarding the exclusion of the sign on the video, which showed another prior forced cell move in which Mr. Bourget was the first officer to make contact with the man. And to start, as you know, Mr. Bourget was convicted of violating the prisoner's right to be freed from cruel and unusual punishment for striking the prisoner once with a protective shield during an ordered use of force against the prisoner, which was known as this forced cell move. And the trial really centered on Mr. Bourget's intent. What was his understanding of what level of force was appropriate to employ as the first officer making contact with the inmate in those situations? And of course, his understanding of what level of force was appropriate was the function of his training and his experience. And there really was no better demonstration of his training and his experience than the sign on the video, which was shown to officers during annual trainings on the use of force, which also had Mr. Bourget as the number one officer on the use of force team. And, you know, first, use of a forced cell move is like, you know, descriptions of these things are confusing when you're reading the trial transcript, but a forced cell move is something that would have been very unfamiliar to the jury. Certainly it was unfamiliar to me before I worked on this case. And it involves an instance where five officers are dressed in full riot gear. They essentially storm a cell in a train formation to remove an inmate who has typically refused some order, usually a directive to lay down and allow the officers to come in peacefully or in order to transfer cells peacefully. And these are incredibly violent events. The officers rush in. They're going in at full speed. They tackle the inmate who's not armed, often not even actively resisting. And it is alarming and distressing to view video footage of these events. So from the outset, I think it was very important for this jury to be able to see what these events look like. And without just looking at the one for which Mr. Wargett was charged. Given the different circumstances in the two videos, the difference between one of the inmates I think was handcuffed, one was not, there was an open sink, there was not one here, would the risk of confusion to the jury be high in a case like this? Well, I think that the similarities certainly outweighed the differences here. And those differences could have been argued, but they didn't undermine the relevance of the fundamental issue, which was what was Mr. Wargett's understanding of what level of force he was supposed to use when he made contact, that initial contact with the inmate. And so what the shot scion video shows, as you know from the briefs, is that first there's this period of what they call pain compliance, where they're trying to get him to comply by spraying pepper spray into the cell using a pepper bomb, using some other type of grenade, and then the last act is to send in the use of force team, this train of officers dressed in the riot gear. And what you see in the scion video is the door opens, and at that time, the inmate, scion, is standing at a sink, peacefully, not resisting, not doing anything actively aggressive, washing the pepper spray off of his face. And Mr. Wargett is the first person in the train of officers, comes in, lowers his chest, lowers his arms, and runs into him really at full speed and hurls him against a wall into a railing. And what you see in the video that's at trial is where Wargett has a shield. Yes, that was not used in scion, and yes, Mr. Trapasso, the inmate in the instance here, was handcuffed. But the entry is made at the same speed, the same level, and what was important was the nature of the force that Mr. Wargett used when he made that initial contact. On that, in your reply brief, you wrote that the only question for the jury was whether the manner in which Borget initially struck KT with the shield was knowingly excessive. And it seemed that the government also conceded that going in full speed was appropriate. So if the issue, and maybe you want to say otherwise, but if the issue was the manner in which he struck him with the shield, how does the scion video bear on that in any way, since there was no shield? So I think the scion video is important because, as I said, there's a difference between him being handcuffed and a difference between using the shield. But he was ordered to make this move, he was ordered to use the shield. So the only decision that Mr. Wargett makes is how much force am I going to use when I make this initial contact with the inmate. And the scion video was relevant to that because his defense was the amount of force that I used in pushing the shield into Mr. Trapasso was the same as the amount of force that I use every time I do one of these entries against an inmate. But how could that be? The shield was with my arms. If you think of it, it's just sort of a measure of force, right? It's the mass times acceleration. It was basically the same between... But wasn't there evidence that he tilted the shield so that the edge of the shield hit the prisoner in the head? Well, I think, actually, when you look at the video, you see that it wasn't the top of the shield that hit him under the chin, that the shield was concave like this, and it would have been almost impossible to do that. The fulcrum point of the shield was above the midpoint, so when you walk forward with it, of course, it's going to go down a little bit. And it was originally aimed at the prisoner's neck, but he raised it up to hit him in the face. So all of those things, I think, were things that the prosecutor could have argued as to why Mr. Borget's defense might not hold, but certainly it wasn't a reason to exclude that evidence. And there was controversy between the government witnesses and Borget's witnesses between this notion of what does it mean when the officers say that they're trained in these situations to go in at 100% in full speed. And the government witnesses are saying, oh yeah, but that doesn't, there's no sort of exception to the rule for a forced cell number. And what Borget's witnesses were saying was sort of, well, it is, you know, you go in, you go in full speed, you hit the inmate, you knock him to the ground, and you knock him to the floor, and then you use the minimum amount of force necessary to control the inmate. And the Scion video was really critical to explain that to the jury. Was the government, did you construe the government as arguing that going in with five guys or rushing in at full speed or deciding to use a shield, that any of those were decisions for which your client should be held accountable? Not in the brief. I mean in the... Well, I'm talking about a trial. Yeah, and the trial, I mean, the government argues, I think, that, you know, Mr. Borget is trying to blame everybody else because he didn't get training on the shield, nobody told him to temper the amount of force that he used in making contact with the initial inmate. So I think, but I think the government generally conceded that the decision to use the shield was not Mr. Borget's. And the decision to use a forced settlement against a handcuffed inmate was not Mr. Borget's. So that is why what the jury was really left to consider was not, was it appropriate to use a shield against a handcuffed inmate? The decision that the jury was faced with was Mr. Borget's decision to use the amount of force that he used when he struck the inmate, was that appropriate? And of course the Scion video was relevant to that because it showed him doing it in a different context. And I think the judge's descriptions, or the judge's analysis saying, well, you know, Captain Bollinger said that, you know, that wasn't really the reason he used this video for training. It was because he wanted to show the proper escalation of force before that most drastic instance of sending the team of officers in. But that doesn't diminish the relevance that the video had to the people who watched it. Including Mr. Borget. And the real point here is, what lesson was Mr. Borget supposed to take from seeing the Scion video used at an annual training in which he uses this incredibly high level of force to disable the inmate? Other than, this is how I'm supposed to do it. Was there a debate below in the testimony about what the level of force was needed to enter into this particular cell? Or did the government agree that a full force entry was a matter of course? No. I mean, I think there was a debate. And I think even when you look at the government's response to the sufficiency argument here, they cite some testimony. Counsel, didn't the government... Well, first, I agree with you. The key issue in the case is the exclusion of this video. And the district court ruled... Well, at the first trial, which ended in a mistrial, the government did not object. At the second trial, which ended in a conviction, the government did object. And then the district court said, one, I'm going to exclude it because it's not relevant. And two, even if it were relevant, under Rule 403, it unfairly prejudices the government's case and might confuse the jury. Whether that was the correct legal standard is, under our case laws, an issue. But if you go back to the relevance issue, the government, in its opening statement, sounded the theme of there is a difference between entering with 100% and using minimal force. And throughout, your client was trained to use minimal force. I thought part of the reason that the Scion video arguably is relevant is that what it shows is you go in 100% both with speed and force. That's the way you've described it to us. So that is directly relevant to and contrary to the government's position in the opening statement. In the closing, you argued that the Scion video showed this forced cell move. Your client had been given instructions. That's what was to be done. He was given instructions to use a shield. And he was never provided any real training other than the training shown in the Scion video. And yes, you could argue to the jury there are differences. But that's a jury issue. It doesn't make the evidence inadmissible. And this is not a civil case. It's a criminal case. So have I mischaracterized what happened at trial? No, not at all. Except that he wasn't allowed to argue anything about the Scion video because it wasn't there. But he did that in the original trial. So the only video that the jury saw was of the entry at issue? Correct. And then on top of that, as I understand it, the other piece of different evidence from trial number one was a statement by one of the other officers who viewed the video and said, that's bad. That came in at the second trial. Was it in the first trial? I can't remember that off the top of my head. And I'll have to go back and apologize. And I see that I'm beyond my time here. You have two minutes for rebuttal later. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please introduce herself on the record to begin? Good morning. May it please the Court, Karen Eisenstadt for the Government. So I'd like to start with the Scion video as that was the focus of the argument from the appellant. So as the Government pointed out in its response brief, just for clarity, he's arguing four different bases of probative value on appeal. Two were preserved and two were not. And because I think the reply brief muddies the question of what was preserved, I'd like to just quote a few snippets from the trial transcript that make it clear. So on page 8 of the second volume of the Joint Appendix, when this issue first comes up, Defense Counsel says, Scion and Sparks, those are two different videos. These were two videos, if you recall, Your Honor. One was for training that was used each year, was Testify 2 by Mr. Bollinger. That would be the Scion video. The other one, which is the Sparks video, was one you allowed us. One video, I think two, to show any additional forced cell moves to give the jury an idea of how it works, generally just an example of another forced cell move for the jury to see. Two pages later, page 10 of the second volume of the Joint Appendix, Defense Counsel affirmatively withdrew his request for the example, the Sparks video. He says, Your Honor, if it saves time, we don't have to show the Sparks video. The district court then clarified with counsel what remained for the court to rule on and said, Okay, so your position is you're showing the Scion video because it's something shown in training, which we're going to have testimony about before the jury. Counsel says, Yes. Then after the district court the next day rules excluding the Scion video, and this is on page 184 of the transcript of the Joint Appendix, he says, Again, if I could just say for the record, the reason Mr. Bourget wanted the Scion video is for training. So it's clear that the sole purpose for which he offered the Scion video was in relation to its use in officer training. How is that a waiver? It seems to me everything he has said at oral argument today is consistent with the notion that this is the training video that was used at the prison. He was, in fact, the star performer as the lead man in the training video for the forced cell move. How is this a waiver? So the government is arguing not waiver but plain error, so forfeiture. The difference is because what the district court addressed was, one, if this is explicitly how it's used in training, which the witness said it was not, so that was not a basis. That was the only evidence that he proffered as the proponent of evidence to support that view. Though there was a fair inference from the videos used in training without criticism that this was a sanctioned forced cell move, and in fact Bollinger agreed it was, the district court addressed that too. The question then is the probative value of that in the context of this case, and because of the differences in terms of use of the shield, whether the inmate was restrained, the district court viewed it as more confusing. Okay, let's take it one at a time. Why is it irrelevant since it seems to go to the heart of the defense case, not the government's case, but the government doesn't get to dictate what a defendant puts into evidence, even if the government is willing to dictate, to concede that there was no training whatsoever on use of the shield and somebody else ordered him to use the shield and somebody else ordered him, a superior ordered him to do the forced cell entry. Why is this not relevant? So just as an initial matter, the government did contest whether he volunteered, etc., and whether he was part of the decision. What does that have to do with relevance? So on the question of relevance, I think what your Honor is suggesting is the third or fourth basis of relevance that the government sees him as arguing, which is that the scion video is representative of a typical forced cell move, i.e., they all work this way, 100% speed equals that level of force, etc. That is not an argument he made to the district court. If you look at the district court's ruling, it's not addressed there because he didn't make it. And the issue here, then, is on plain error view, and the question is of conditional relevance. So you'd like to win this issue on plain error review. Can you just drop that for a moment and just get to the guts of the question of why this is irrelevant? So probative value depends, in some cases, on conditional relevance. And here he wants to offer, as evidence of his state of mind or what's typical, something that's the government has to show that he had an intent when he went in to deprive the inmate of his right not to have excessive force used against him, which amounted to cruel and unusual punishment. Correct. So as the proponent of the evidence in this case, defendant had an opportunity to make a proffer to the court about conditional relevance. And putting aside the issue of whether he argued this before the court or not, the only evidence that he pointed to was Bollinger's testimony that this was atypical, not typical, and exceeded any forced cell move we had. And I note that although the defendant chose not to testify in the second trial, he did testify in the first trial after Bollinger had said that, and he did not suggest in any way that he thought the Sion video represented a typical forced cell move rather than an extreme one, and he also didn't testify that it was in any way connected to his state of mind. You just introduced a new topic. A typical forced cell move as opposed to an excessive? The argument he's making is that it was typical because, in his view, the policy was that they're all supposed to be done this way. Okay. I may be confused about the facts, but wasn't this a training video of a forced cell move? This was a video that was shown in training, and it was testified to that it was shown in training for everything leading up to the entry to the cell as opposed to the entry to the cell, which was, you know, the use of the pepper bomb and escalation, et cetera, which is a different purpose for showing the video than to say, watch this last part, this is the way you should do the entry into the cell. So in terms of how it was actually used, Mr. Bourget, when he testified in the first trial, after Bollinger said these things, did not disagree with anything Bollinger said about how the video was used in training. So there's no evidence to suggest Bollinger was lying, and he didn't make any argument to that effect to the district court who had heard the testimony in the first trial and thus would be well positioned to make a finding on that point. But in the first trial, the video was shown, and at least as argued more fulsomely to us, the officer who said it was atypical was part of the command staff that had a reason, if you will, to cover their asses? Well, again, to the extent you wanted the district court to make a finding as to whether Bollinger's testimony was credible, you could have done so. No, on admissibility of evidence? Correct. Why doesn't it go to the jury whether that evidence is credible or not? Because it's relevant for conditional relevance, again. This is only relevant to show what's typical if there's some evidence to suggest that, in fact, it's typical. Otherwise, he's just introducing it, and it's just arguing. I'm sorry, you've just lost me again. This is how he was trained? This is how he was trained in other respects. He was not trained to conduct forced sell moves based on this video. So the video, though it may show a sanctioned use of force in that there was nothing inappropriate about it, did not bear on the issues in this case because it was too dissimilar to the use of force that was at issue in this case. And to the extent he wanted just an example to show the jury, that was what he had argued for the Sparks video. I want that as an example. And he never revived the request for any example after the Scion video was excluded. So that was not an argument he ever made about the Scion video, that this is a good example. And given that it was admitted that it's— No, I thought they are not an example. This is how he was trained. It was a training video that was used. And it's up to the jury then to determine whether they think because the circumstances are so different, it does not actually show he did not have the requisite state of mind. I understand what Your Honor is saying. I think here the question is, it's a Rule 403 ruling. And whether the district court on that issue abused its discretion in finding that when the only evidence you, the proponent of this video, can point to is a guy who said the opposite of what you're saying he said, I'm not seeing how you've established that link so that this evidence can be presented to the jury in that way, in a way that's anything other than misleading to the jury. And, of course, he could have made a proffer. The government at trial in its opening argued that the speed isn't in dispute, but what's in dispute, it's the force and the power of the hit, the initial contact. That's the use of force. That's at issue in the case. So as I think I hear the argument being articulated here today by the defendant, they're saying if the jury had seen the Scion video, they'd know that that level of force is something that he could reasonably have anticipated was proper. So it would set a benchmark or a lower barrier. Why isn't that at least relevant? So I think this goes to the basis of needing to show an example. So to the extent, in his view, this is typical, this is standard, this is how they were always done, which, again, the government maintains he did not argue to the district court with respect to the Scion video. The question of evidentiary alternatives then comes into the 403 analysis in terms of probative value. And every single force element at Devins is videotaped. There are numerous force cell moves that would then show, to his theory, a similar use of force, and that would not raise the issues that this one raised that the district court pointed to, that you're confusing them about how it's used in training, it's misleading, there's the propensity inference because he was involved. I mean, superiors in the prison selected that video to show to him and other officers. Correct. That sounds like training. Why else would they show it to them? Right. It is part of training, but it's training on it. If the focus in the training was on a completely different issue... So it's telling them, see, this level of force used in Scion, that's OK. And then he wants to argue he used no more force here, and the government wants to argue, yes, you did, the way you used the shield was more force, and they'd argue about that. I think the issue is if you want an example to show what is typical or standard, there are numerous examples. Any other force cell move at Devins that, for example, doesn't involve the defendant could be used to make the exact same point. But it's relevant that it involves the defendant because he's getting... I mean, if at our job we saw someone show a video as the proper way to do something and it was as if doing it, we'd really take that to heart that it's been sanctioned. Right. So the government doesn't disagree that there's a reasonable inference that the officers watching the video would have understood this was an appropriate use of force because no one said otherwise and they showed them the video. But that was what the district court addressed in terms of how dissimilar the... So how would the jury get confused? It would have been confusing from the perspective of not understanding what it is that made the video relevant. So he consistently argued and still does that this is actually how I was taught to do them, that I was showed this video and said this is how you do the force cell move, which is simply contradicted by the evidence. And so that would have been a misleading argument. It was very clear that he planned to make. I thought you said it was used for training. With him as the star guy in it and he saw it in the training, that sounds like this is how you do it. I think if you look at the testimony of Bollinger, that was the question put to him. And the answer is that no, that is not what I was talking about in training. I showed it and I said look at how the lieutenant recited for the camera how he was escalating use of force in terms of the various forms of pepper spray, pepper bombs, et cetera, et cetera. That was what was discussed. They didn't then cut off the video and not show the end of it, but that was not what it was used for in training. And this was not purely a training on force cell moves. It was a training on use of force generally. So are you suggesting that the ending was bad in Scion, but they just ignored that? No. I think Bollinger testified it was an appropriate use of force. Every single one goes through an after-action review. If no problem is identified, then that was a sanctioned use of force, and this was one of them. But it's just one of many examples of such uses of force. And based on Bollinger's testimony, which is, again, the only thing he pointed to as the proponent of this evidence, and he could have made a proffer as to what he would say at the second trial or any of his defense witnesses. He chose not to do that. The only evidence we have is this exceeded any force cell move that we had, and this is not how it was used in training, and so it would be misleading to argue that it was how it was used in training. Let's assume we disagree with you, and we think the trial judge made a mistake here in that the Scion video related to a central issue in the case. Do you have a harmlessness problem, or would you argue that it's still an issue of harmlessness? So the government, in its responsive brief, made a fairly limited harmlessness argument based on, you know, our arguments about the limited probability of the video, and that is the argument we are advancing. I would just like to note, however, just to clarify the record, when he suggests that this was the main or only evidentiary difference between the two trials, that that's definitely not correct. The first trial was twice as long as the second trial, had a second defendant, had additional charges, different witnesses, and I think very significantly, the defendant chose to testify in the first trial, and he chose not to in the second trial, which is, in the government's view, a very significant evidentiary difference between the two. However, the harmlessness argument we've made is the one that's in our brief. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. Benjamin Brooks for Mr. Borget. I won't be long. It's clear that you understand the arguments that we've made in the briefs. Just quickly, with respect to harmlessness, I think it's clear that this was sort of a razor-thin conviction. There was a hung jury on the first trial, and then at the second trial there was a note from the jury saying, we can't reach a verdict, and then it was only after they were instructed again to go back and deliberate that the verdict came down. So I think it's clear that this evidence, which was so important to the defendant's ability to demonstrate to the jury what his state of mind was, was clearly not harmless. And then just with respect to Bollinger's testimony about it being an atypical use of force in Sion, when he said it was an atypical use of force, in that context what he was talking about was the different levels of force that they employed before they entered the cell. There was nothing to indicate that when he said it was an atypical use of force, he was saying that the manner in which Forget struck Sion during the actual forced cell move was atypical. It was about what the lieutenant did before that that was atypical, and everything suggested that the manner in which Forget struck Sion was typical of how the officers did it, and it was used at training, and it was shown to officers as what an appropriate level of force was, and he was never disciplined or admonished for it. So what other lesson was he supposed to take from that other than this is how I'm supposed to handle the prisoner in these situations? If he did tip the shield so that the edge of the shield struck the prisoner rather than the face of the shield, would the Sion video have offered any indication one way or the other of whether that was appropriate? I don't think it would have spoken to that particular point, but it still would have been relevant to his defense, which is that when I struck him, when I went in, I was going at full speed, and that was how I was trained, and that was what I believe was appropriate. Thank you. Thank you, counsel. That concludes argument in this case.